No. 18-10339

IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA
Plaintiff-Appellee

v.

JIA HUI CAI
Defendant-Appellant

Appeal from the United States District Court for the District of Hawaii
The Honorable Leslie E. Kobayashi, United States District Judge
District Court No. 1:16-cr-00322-LEK-1

**DEFENDANT-APPELLANT'S OPENING BRIEF**

Peter C. Wolff, Jr.
Federal Public Defender, District of Hawaii

Craig Jerome
Assistant Federal Defender
300 Ala Moana Boulevard, Suite 7104
Honolulu, Hawaii 96850
Telephone (808) 541-2521
Facsimile (808) 541-3545
E-Mail craig_jerome@fd.org

Counsel for Jia Hui Cai

# Contents

Jurisdiction ................................................................... 1

Bail Status ................................................................... 1

Issue ........................................................................ 1

Case Statement ............................................................... 3

Argument Summary ............................................................. 5

Argument ..................................................................... 8

Conclusion ................................................................... 25

Statement of Related Cases

Form 8 Certificate of Compliance

i

# Table of Authorities

## Cases

*California v. Green*, 399 U.S. 149 (1970) ....................................................... 10

*Coy v. Iowa*, 487 U.S. 1012 (1988) .................................................... 22

*Crawford v. Washington*, 541 U.S. 36 (2004) ................................................ 19

*Curtis v. Chester*, 626 F.3d 540 (CA10 2010) ................................................ 16

*Gagnon v. Scarpelli*, 411 U.S. 778 (1973) ........................................................ 8

*Jay v. Boyd,* 351 U.S. 345 (1956) .................................................... 21

*Johnson v. Finn,* 665 F.3d 1063 (CA9 2011) .................................................. 11

*Kentucky v. Stincer*, 482 U.S. 730 (1987) ........................................................ 22

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ......................................... 8, passim

*Oshodi v. Holder*, 729 F.3d 883 (CA9 2013) ............................................ 11, 21

*United States v. 1998 BMW "I" Convertible,*
    235 F.3d 397 (8th Cir. 2000) ....................................................... 11, 21

*United States v. Comito*, 177 F.3d 1166 (CA9 1999) .......................... 8, passim

*United States v. Carthen*, 681 F.3d 94 (CA2 2012) ........................................ 18

*United States v. Fennell*, 65 F.3d 812 (CA10 1995) ....................................... 23

*United States v. Hall*, 419 F.3d 980 (CA9 2005) ..................................... 22–23

*United States v. Harris*, 838 F.3d 98 (CA2 2016) ......................................... 16

*United States v. Holden*, 473 Fed.Appx. 759 (CA9 June 1, 2012) ................. 16

**Table of Authorities**
(Continued)

**Cases**

*United States v. Howard*,
576 Fed.Appx. 664 (CA9 May 29, 2014) (unpublished) ...................... 16

*United States v. Jessie*, 656 Fed.Appx. 97 (CA6 July 27, 2016) ................... 16

*United States v. Lomeli-Gonzalez*,
1996 WL 375047 (CA9 July 3, 1996) (unpublished) ............................ 9

*United States v. Martin*, 984 F.2d 308 (CA9 1993) ............................ 9, passim

*United States v. Mejia,* 69 F.3d 309 (CA9 1995) ........................................... 11

*United States v. Perez*, 526 F.3d 543 (CA9 2008) ........................................... 8

*United States v. Pritchard*, 579 Fed.Appx. 513 (CA7 Sept. 16, 2014) .......... 18

*United States v. Ridgway,* 300 F.3d 1153 (CA9 2002) ................................... 11

*United States v. Shirley*, 2014 WL 4802252 (D. Ariz. Sept. 26, 2014) .......... 23

*United States v. Simmons*, 812 F.2d 561 (CA9 1987) ........................ 8, passim

*United States v. Taylor*, 931 F.2d 842 (CA11 1991) ...................................... 10

*United States v. Thoms,* 684 F.3d 893 (CA9 2012) ........................................ 11

*United States v. Winston*,
447 Fed.Appx. 864 (CA9 Aug. 17, 2011) (unpublished) .................... 23

## Table of Authorities
(Continued)

**Statutes**

18 U.S.C. §2320 ................................................................. 3

18 U.S.C. §3231 ................................................................. 1

18 U.S.C. §3565 ................................................................. 1

18 U.S.C. §3742 ................................................................. 1

28 U.S.C. §1291 ................................................................. 1

Haw. Rev. Stat. §707-716 ................................................. 3

**Rule**

Fed. R. Crim. P. 32.1 ............................................. 1, passim

**Other Authority**

Chafee, Z., *The Blessings of Liberty* (1956) ................................. 21

**Jurisdiction**

This appeal arises from a probation revocation proceeding, in which the district court deprived defendant-appellant Jia Hui Cai of his right to confrontation, guaranteed by the Fifth Amendment's due process clause and Fed. R. Crim. P. 32.1. The district court had jurisdiction under 18 U.S.C. §3231 and §3565, and filed the judgment, from which Cai takes this appeal, on September 6, 2018. Defendant-Appellant's Excerpts of Record, Volume 2 (ER2) 108. Cai filed a notice of appeal on September 7, 2018. ER2 112. This Court has appellate jurisdiction under 18 U.S.C. §3742 and 28 U.S.C. §1291.

**Bail Status**

Cai is imprisoned at CI Taft. His projected release date is April 30, 2019, at which time he will commence a 36-month term of supervised release.

**Issue**

A probation officer alleged that Cai violated his probation by threatening his wife and mother-in-law in violation of state law. Over Cai's objection that due process and Rule 32.1 guaranteed him the right to confront and cross-examine his wife and his mother-in-law, the district court relied on the alleged victims' hearsay statements to responding police and in a 911 call to find that the threats occurred and to revoke Cai's probation. The district court ruled that the statements to police were reliable and that the alleged victims' fear of Cai

provided good cause to justify the government's failure to call them as witnesses. As to his wife's 911 call, the district court ruled that her 911 statements were admissible because they were "not testimonial" and were "not hearsay" at all, ER1 10, without weighing Cai's right to confrontation against good cause to deny him that right.

The general question presented is whether the district court violated Cai's due process and Rule 32.1 right to confrontation in so ruling. Stated more specifically, as to the hearsay statements in police reports, the questions presented are whether the district court reversibly erred: (1) because the record does not support the court's finding that the alleged victims would not testify because they were afraid of Cai; or (2) because suspected fear and the assumed reliability of the hearsay statements do not establish the particularly significant good cause necessary to outweigh Cai's right to confrontation, which—due to the critical importance of the hearsay statements to prove the alleged probation violation, the lack of any meaningful way to refute their hearsay statements, and the severe consequences of revocation—weighs heavily in the due process balance; or (3) because the statements are not, in fact, sufficiently reliable at all, much less to a degree that overcomes the heavily-weighted right to confrontation side of the balance in this matter. As to the 911 call, the question presented is whether the district court reversibly erred by not conducting the

2

required balancing test, because conducting it demonstrates that the government's good cause is insufficient to outweigh Cai's fundamental right to confront his accuser.

### Case Statement

On January 18, 2018, the district court sentenced Cai to a five-year term of probation, on a single count of counterfeit goods trafficking, a violation of 18 U.S.C. §2320. DC ECF 191; ER2 133. A condition of his probation was that he not commit a state crime. DC ECF 191. On July 3, 2018, his probation officer commenced a probation revocation proceeding, alleging that Cai violated that condition by committing two counts of first degree terroristic threatening, in violation of Haw. Rev. Stat. §707-716, by using a knife to threaten his wife, Monique Lai, and mother-in-law, Li Ying Lo. ER2 13–15. The State of Hawaii instigated its own criminal proceeding against Cai on the basis of Lai's and Lo's allegations. When Lai and Lo both recanted to a state prosecutor before Cai's preliminary hearing, however, the prosecutor appears to have believed the recantations were strong enough to reasonably call into doubt the veracity of their initial accusations and, accordingly, elected to dismiss the state charges against Cai. ER2 19–20, 79.

Lacking a state conviction, and in light of the recantations, the government elected to rely solely on hearsay statements Lai and Lo made to

police the night of the alleged threats and Lai's 911 call to prove that the threats occurred and to establish the probation violation.[1] ER2 27–28. Cai objected, arguing that the failure to require Lai and Lo to testify violated his due process and Rule 32.1 right to confrontation. ER1 1; ER2 28–32, 56–60. In a written order, the district court found in favor of the government. ER1 1–12. As to the hearsay statements to police, the court ruled that Cai's right to confrontation was diminished by the assumed reliability of Lai's and Lo's hearsay statements and that the government had established good cause to deny Cai confrontation because, it found, both witnesses were afraid to testify against him. ER1 7–8. As to Lai's 911 call, the court did not balance Cai's right to confrontation against the government's good cause to deny him that right; instead, the court ruled that Lai's 911 call was admissible because it was not testimonial and was not hearsay at all. ER1 8–11.

---

[1]     Unfortunately, while the record reflects that the district court was provided copies of the police report that contained Lai's and Lo's statements to responding police and an audio recording of the 911 call, the police report and 911 call were not made a part of the electronic district court record. The district court's ruling revoking Cai's probation summarizes the pertinent allegations the witnesses made in those statements. ER2 91–92. If this Court believes it needs to be provided with the actual police report and the 911 call, Cai's counsel is relatively sure that the parties would be able to agree on a joint submission of those things to this Court. As the remainder of this brief indicates, however, it does not seem necessary to do so, given that the issues raised in this appeal do not turn on the specific content of the witnesses' statements.

The district court accordingly relied on Lai's and Lo's hearsay statements to police and Lai's 911 call to find that Cai had engaged in conduct constituting the offense of first degree terroristic threatening under state law and to revoke his probation. ER2 90–93. The court resentenced Cai to 10 months of imprisonment, followed by a 36-month term of supervised release. ER2 101–105, 108–110. The district court filed its judgment on September 6, 2018. ER 108. Cai filed a notice of appeal on September 7, 2018. ER 112.

## Argument Summary

A defendant has a due process right to confront and cross-examine the witnesses against him in a probation revocation proceeding. Whether he can be denied that right depends on whether the government establishes sufficient good cause to outweigh the defendant's interests in confrontation. The district court did not properly apply this "right-cause balancing" test and, consequently, reversibly erred in relying on unsworn hearsay statements to find that Cai committed the state offense of first degree terroristic threatening and violated his probation by threatening his wife (Lai) and mother-in-law (Lo).

Cai's constitutional and Rule 32.1 interests in confronting Lai and Lo carried significant weight. The statements were critical to the court's finding that he threatened Lai and Lo, and the court expressly and exclusively relied on Lai's and Lo's out-of-court statements to revoke his probation. His ability to

5

refute their accusations was nonexistent. In lieu of being able to cross-examine them and have the court assess their credibility through live testimony, he was reduced to trying to rely on additional unsworn hearsay statements in which they tersely recanted their initial allegations—disavowals and retractions Cai was precluded from fully developing through cross-examination. The consequences of the court's reliance on the statements was severe, because revocation of his probation led to an imprisonment term (followed by a supervised release term). The "right" side of the balance, accordingly, weighs heavily in favor of Cai's right to confrontation.

When the right side of the balance is so heavily weighted, the government must demonstrate particularly significant good cause for denying that right. Here, the government did not do so. Lai and Lo live locally and there is no indication that either had or would have evaded service if summoned to testify; there was, accordingly, no difficulty or expense in procuring their testimony. The district court inferred that both were afraid to testify to find good cause (presumably under the rubric that fear equated to difficulty in procuring their testimony), but the record does not support any such finding of fear. And even if it did, this Court's cases make clear that, absent a witness's explicit assertion of fear or intentional evasion of service, any such suspected fear is not sufficient to establish the particularly significant good cause that is

6

required to deny a defendant the right to confront his accuser. This Court's cases also make clear that any supposed reliability of the statements does not suffice—standing alone without corroboration from other evidence or consistency in the retelling or some other such independent indicia of reliability—to establish the requisite degree of good cause. Even were that not so, the record here demonstrates that the statements were not, in fact, reliable to begin with. Both Lai and Lo informed responding police that they did not want to prosecute, both quickly retracted and disavowed their accusations (in a manner sufficiently convincing to a state prosecutor to result in dismissal of state charges against Cai before his preliminary hearing in state court), and it is the disavowals that Lai, at least, has consistently retold, not her initial accusation.

Nor was the error harmless, given the district court's explicit and exclusive reliance on the statements and the absence of any other evidence sufficient to support revocation.

The district court thus reversibly erred in denying Cai the right to confront and cross-examine Lai and Lo and in relying on Lai's and Lo's unsworn statements (both to responding police officers and in a 911 call—indeed, as to the 911 call, the court did not even do the requisite balancing test at all). Accordingly, this Court should reverse the district court's judgment of

revocation and remand this matter for the district court to reinstitute Cai's probation.

## Argument

1.     The district court's compliance with a defendant's due process right to confrontation in a revocation proceeding is a mixed question of constitutional law and fact that this Court reviews de novo. *United States v. Perez*, 526 F.3d 543, 547 (CA9 2008); see also *United States v. Comito*, 177 F.3d 1166 (CA9 1999) (reaffirming that *Morrissey v. Brewer*, 408 U.S. 471 (1972) (recognizing due process right to confrontation in a parole revocation proceeding) applies in all revocation proceedings, be it for supervised release or probation (citing, among other cases, *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (applying *Morrissey* to probation revocation proceedings))).

2.     "Under *Morrissey*, every releasee is guaranteed the right to confront and cross-examine adverse witnesses at a revocation hearing, unless the government shows good cause for not producing the witnesses." *Comito*, 177 F.3d at 1170 (citing *Morrissey*, 408 U.S. at 489); see also, e.g. *United States v. Simmons*, 812 F.2d 561, 564 (CA9 1987) (recognizing that *Morrissey* calls for employing "a process of balancing the [releasee's] right to confrontation against the Government's good cause for denying it"). In assessing the defendant's side of the "right-cause balance," considerations

8

include the importance of the evidence to the court's revocation finding, the

defendant's opportunity to refute the evidence, and the consequences of the

court's revocation finding. *United States v. Martin*, 984 F.2d 308, 310–311

(CA9 1993). The government's good cause is assessed by way of considering

"the difficulty and expense of procuring witnesses," and any "traditional indicia

of reliability borne by the evidence." *Martin*, 984 F.2d at 312 (citations and

quotation marks omitted). Rule 32.1 also guarantees the right to question

adverse witnesses in revocation proceedings, and is construed by this Court to

have "enshrined" the right-cause balancing test that *Morrissey* and *Simmons*

articulated. *United States v. Lomeli-Gonzalez*, 1996 WL 375047 (CA9 July 3,

1996) (unpublished); see also Rule 32.1(b)(2)(C); *Comito*, 177 F.3d at 1170.

       a.    Cai's side of the right-cause balance weighs heavily in favor
of requiring confrontation.

The defendant's right to confrontation weighs more heavily when the

evidence at issue is central to the court's ultimate revocation finding. *Martin*,

984 F.2d at 311 ("[t]he more significant particular evidence is to a finding, the

more important it is that the releasee be given an opportunity to demonstrate

that the proffered evidence does not reflect verified fact" (internal quotation

marks omitted)). This factor is readily established here because the district court

explicitly and exclusively relied on Lai's and Lo's out-of-court statements to

9

determine that Cai violated his probation. *Martin*, 984 F.3d at 311 (importance

established when "the court explicitly relied on the information" (quoting

*United States v. Taylor*, 931 F.2d 842, 847 (CA11 1991); emphasis omitted));

ER2 at 90–92. Indeed, the evidence was "uniquely important to the court's

finding" that Cai threatened his wife and mother-in-law, because Cai denied

doing so "and the government presented no other evidence of" the alleged

threats. *Martin*, 984 F.2d at 311. The district court's order, moreover,

acknowledges that the evidence was "critical." ER1 7. Cai, accordingly, "had a

very strong interest in refuting" the threat allegations "upon which the district

court exclusively relied in finding" that he made those threats. *Martin*, 984 F.3d

at 311.

Cai's opportunity to refute Lai's and Lo's allegations was minimal.

Instead of being able to use "the greatest legal engine ever invented for the

discovery of truth," *California v. Green*, 399 U.S. 149, 158 (1970), Cai was

limited to trying to rely on additional, unsworn out-of-court statements, in

which Lai and Lo disavowed their prior statements and said Cai had been

holding a cell phone, rather than a knife as they originally reported, and in

which Lai further maintained that she and Cai had merely argued with each

other. ER2 77–78. Those retractions—buried beneath additional layers of

hearsay and left entirely undeveloped by cross-examination—were a poor

substitute for live, in-court testimony, especially because the court was tasked

with figuring out which set of statements were the more credible:

> The importance of live testimony to a credibility determination is well recognized and longstanding. See, e.g., *United States v. Thoms,* 684 F.3d 893, 903 (9th Cir. 2012) ("The longstanding and repeated invocations in caselaw of the need of district courts to hear live testimony so as to further the accuracy and integrity of the factfinding process are not mere platitudes. Rather, live testimony is the bedrock of the search for truth in our judicial system."); *United States v. Mejia,* 69 F.3d 309, 315 (9th Cir. 1995) ("There can be no doubt that seeing a witness testify live assists the finder of fact in evaluating the witness's credibility."); see also *United States v. 1998 BMW "I" Convertible,* 235 F.3d 397, 400 (8th Cir. 2000) ("[J]udges simply cannot decide whether a witness is telling the truth on the basis of a paper record and must observe the witnesses' demeanor to best ascertain their veracity—or lack thereof."). Precisely because of the importance of live testimony to credibility determinations, we have held, as a matter of constitutional due process, that when a magistrate judge makes a report and recommendation on a motion to suppress evidence, the district judge may not reject the magistrate judge's credibility findings without conducting his own evidentiary hearing. *United States v. Ridgway,* 300 F.3d 1153, 1157 (9th Cir. 2002). We also applied this rule to magistrate judges' credibility determinations in habeas *Batson* claims. *Johnson v. Finn,* 665 F.3d 1063, 1075–76 (9th Cir. 2011). In so holding, we explained that this requirement ensures that any factual determination "will be the result of first-hand observations of witnesses and evidence." *Id.* at 1072.

*Oshodi v. Holder*, 729 F.3d 883, 891–892 (CA9 2013). And so again as in

*Martin*, so here: "Th[e] nearly complete denial of *any* confrontation is the

second factor that contributes" to concluding that Cai's confrontation "right

weighs heavily in the *Simmons* balance." *Martin*, 984 F.2d at 311 (this Court's emphasis).

The consequences of revocation add additional weight to Cai's side of the balance. The district court originally sentenced Cai to probation. Upon revoking his probation, the district court sentenced him to ten months of imprisonment, followed by a 36-month term of supervised release. Imprisoning Cai is a serious, "severe" consequence that also weighs heavily in favor of confrontation. *Martin*, 984 F.2d at 312 (where "the evidence for which [the defendant] alleges he was denied the right to confrontation result[s] in a significant enhancement of his" sentence, there is a need for "even greater protection of the defendant's right to confrontation").

    b. "Because the evidence [Cai] sought to refute was singularly important to the district court's finding, because [he] was denied virtually any opportunity to refute that evidence, and because the court's finding had such severe consequences, [Cai's] *Morrissey* right to confrontation weighs heavily in the *Simmons* balance. As a result, the government's 'good cause' for denying confrontation must be particularly significant if it is to outweigh [Cai's] right." *Martin*, 984 F.2d at 312. It is not, so it does not.

The first cause factor—difficulty and expense of procuring live testimony—adds no weight to the government's side of the balance. Both

witnesses resided locally and there was zero evidence that either was trying to hide from the government or could not be found. In fact, the opposite was true. While the state case had still been pending, state prosecutors were in contact with both Lai and Lo, and both had appeared when asked to in the state case. Nor did the district court's pretrial services officer have any trouble contacting and speaking with Lai prior to Cai's revocation hearing. And the government never represented that it had any trouble contacting either witness. There was, accordingly, no difficulty or expense to procuring either witness to appear in court.

Moreover, as was so in *Martin*, the government further failed to obtain any of the "conventional substitutes for live testimony," such as deposition testimony or sworn affidavits, once it decided not to subpoena Lai and Lo. *Martin*, 984 F.2d at 313. Instead, the government and district court relied on unsworn statements Lai and Lo provided to responding police the night of the alleged incident, and Lai's unsworn statements to a 911 operator, which were not corroborated in any way by the government. Unsworn, uncorroborated hearsay statements are no substitute for live testimony.

Nor does the purported fear that the district court relied upon add any weight, under the guise of counting as difficulty in procuring live testimony, to the first cause factor. For one thing, there is no support in the record for the

13

district court's finding that Lai and Lo "feared for their safety." ER1 8. There are no affidavits, nor even any unsworn statements, from Lai or Lo asserting that they feared for their safety, much less that they specifically feared testifying. The only thing the record discloses is that Lai declined to allow Cai to return to their home before she could talk to him. ER2 77.

Specifically, a pretrial services officer, writing to the district court about finding a placement for Cai, wrote:

> I also called his wife, Monique Lai, this morning to inquire if she would allow him to return home today if released. Ms. Lai informed that she did not feel comfortable with having him return home today as he has been in "jail" for one week. She advised she thinks he may be upset with her for having to spend a week in jail. She further stated that she wants to speak with him first before allowing him to return home.

ER2 77. Lai's remarks to the pretrial services officer do not imply that she feared for her safety. Instead, she plainly states that she merely wanted to speak to him before he came home, apparently so that she could reconcile with him and avoid having him walk in the front door upset at her. That she did not fear for her safety is further confirmed by her suggestion to the pretrial services officer of a possible "temporary" alternative placement with a friend of theirs, a recommendation she would not have made had she feared Cai would harm her in some way if released. ER2 77. As for Lo, there is absolutely nothing in the record to support finding that she feared Cai or feared testifying.

14

Just as compelling, even if there *were* some sort of support in the record for the court's finding that Lai and Lo were afraid of Cai, a witness's fear of the defendant does not, in and of itself, establish good cause to deny confrontation when the right to confrontation is as weighty as it is here. Just as a common sense matter, any such fear cuts equally in two opposite directions. True enough, a witness might fear testifying because she was actually abused and truthful testimony risks further abuse from her abuser, if and when he is released back into the community. But equally true is that a witness might be afraid to testify because her accusation is false and she does not want make the uncomfortable choice between testifying truthfully or committing perjury. There is no way to figure out which motivation is in play, without, that is, prejudging (as the district court appears to have done here) the witness's credibility and deciding whether or not her accusation is true.

Common sense aside, this Court has *repeatedly* recognized that a witness's suspected fear does not, without more, establish good cause to deny a defendant his due process right to confrontation when the right side of the balance weighs heavily in his favor. See, e.g., *Comito*, 177 F.3d at 1172 (government's representation that a witness "was unwilling to testify because she was afraid of" the defendant did not constitute good cause because the government "offered no evidence of any such fear" and the witness was readily

available; note, too, that the defendant's having called the witness a "bitch" in court at his initial appearance was not sufficient to establish fear); *United States v. Howard*, 576 Fed.Appx. 664, 665 (CA9 May 29, 2014) (unpublished) (district court erred in ruling that "it was unnecessary to compel these witnesses to face intimidation or relive fear in order for [the defendant] to have yet another opportunity of confrontation with his victims," because "[a] defendant is entitled to his confrontation rights in each individual case, and where, as here, witnesses are readily available to testify, their preference to avoid having to testify again is insufficient by itself to trump a defendant's confrontation right"). How Howard's due process right to confrontation could prevail, even though he had previous opportunities in collateral cases to confront his accusers, but Cai's does not, when he had none at all, is unfathomable.

This Court (and a handful of others) have only found that fear contributed to good cause when a witness explicitly confirms that she or he is afraid to testify, see, e.g., *United States v. Holden*, 473 Fed.Appx. 759, 760 (CA9 June 1, 2012); *United States v. Harris*, 838 F.3d 98, 108 (CA2 2016), or intentionally evades service, see, e.g., *Curtis v. Chester*, 626 F.3d 540, 547–548 (CA10 2010); *United States v. Jessie*, 656 Fed.Appx. 97, 106–107 (CA6 July 27, 2016) (unpublished). This case does not involve either circumstance.

16

Instead, this is a case in which the government simply declined to summon either witness to appear, believing that the reliability of their initial statements to 911 and police sufficed to carry the day under *Morrissey*, as the government made quite explicit from the outset of the revocation proceeding:

> So, no, at this time we do not plan to put the alleged victims on. As I gather is rather common in domestic violence cases, they have minimized, have changed their stories, have recanted and are no longer cooperative.[2] So for that reason we're not going to be subpoenaing them. What we are going to be relying on are the police report[, because it] contains the written reports of the officers who were involved, photographs, and the written statements that were signed by the victims. We're also going to be relying on the recorded 911 call that was made by Monique Lai which has been provided to the Court and defense.
>
> Now, this is an evidentiary hearing, but of course the rules of evidence don't apply. The standard is somewhat squishy and it's for the Court to determine whether a piece of evidence is reliable. I would argue that the report and the 911 call are in and of themselves reliable. They're public records, business records, and so we would offer those as our evidence.

ER2 27 (typography emended). But as the Seventh Circuit, for one, has noted, the government's belief that reliability carries the day (*even if* the hearsay

---

2     Nothing in the record suggests that Lai and Lo ceased being "cooperative." As noted, Lai readily spoke with a pretrial services officer, and both Lai and Lo appeared when asked to appear in the state court proceeding and readily spoke with state prosecutors. ER2 77, 79. They were both cooperating, they simply were no longer saying what the government wanted the district court to hear.

statements to police and in the 911 call were assumed to be reliable), was quite

mistaken:

> the government's statement that it "elected not to call her" is
> insufficient alone to defeat Pritchard's interests. The prosecutor did
> suggest that Mrs. Pritchard may have been scared of Pritchard and
> intimidated by him, and that she did not want to testify. But there
> is no indication of when she was asked to testify or how firm her
> refusal was. See [*United States v. Carthen*, 681 F.3d 94, 101 (CA2
> 2012)] (affirming the district court's decision not to require the
> government to produce the alleged victim of domestic abuse in part
> because she repeatedly refused to testify, including "just prior to
> the hearing"). The government probably failed to delve into these
> questions because it was under the erroneous impression that
> producing the witness was not necessary as long as the hearsay
> evidence was reliable. The district court was under the same
> impression, and did not explicitly consider these proffered reasons
> in deciding not to require the government to produce Mrs.
> Pritchard.

*United States v. Pritchard*, 579 Fed.Appx. 513, 518 (CA7 Sept. 16, 2014).

Reliability of course weighs in the government's favor as a general matter. But

more is required to establish good cause, and reiterations of domestic violence

stereotypes and *unsubstantiated speculations* that a witness *might* refuse to

testify due to being afraid of the defendant are not enough, especially when the

government must overcome a right side of the balance that weights as heavily

as it does in this matter. In any event, the government did not even establish

reliability here, much less to the degree that would be necessary to outweigh

Cai's significant interest in confrontation.

As to reliability, the second cause factor, the district court ruled that Lai's and Lo's statements to police were reliable because the statements were made contemporaneously with the alleged threats, because police, trained to do so accurately (another finding the record does not support), wrote them down, and because Lai and Lo adopted them by signing them. ER1 7–8. As for Lai's statements to a 911 operator, the district court ruled that they were "not testimonial," under *Crawford v. Washington*, 541 U.S. 36 (2004), and "were not hearsay," because they fell within the excited utterances hearsay exception.[3] ER2 at 10–11. However, this Court, parting with some other circuits, holds that hearsay exceptions do *not* establish that the government's good cause is "particularly significant" enough to overcome a defendant's right to confrontation, at least not when the right side of the balance is heavily weighted in the defendant's favor. *Martin*, 984 F.2d at 312, 314 (business record, there a

---

[3] The excited utterances exception does not render an utterance "not hearsay." It merely renders that particular *kind* of hearsay admissible at trial. Moreover, as the government repeatedly insisted below, the Confrontation Clause (and, thus, its testimonial requirement) and the Federal Rules of Evidence do not apply in a revocation proceeding. Cai has no explanation for why the district court cut to such things with regard to the 911 call, in lieu of conducting the right-cause balancing test *Morrissey* and *Simmons* require. The failure to conduct the requisite balancing test is, of course, error in and of itself. *Comito*, 177 F.3d at 1170 ("the district court's failure to perform the balancing test was erroneous").

urinalysis test report, even if assumed to "carry greater indications of reliability" due to the laboratory's "extensive experience in the area," would "not outweigh [the defendant's] substantial right to confrontation"); see also *id.* at 314 n. 12 ("think[ing] it obvious that a simple finding of reliability, without attention to the 'right' side of the balance, would be insufficient").

More troubling is that the district court completely ignored the indications in the record that the statements were not, in fact, reliable. Both witnesses recanted their allegations, apparently without even speaking with Cai. ER2 77 (Lai recants to pretrial services officer a week after the incident and indicates that she had not yet spoken with Cai since the incident); ER2 78 (Lai and Lo both recant to state prosecutor before Cai's preliminary hearing occurs). The state prosecutor dismissed a state prosecution of Cai at his preliminary hearing, apparently believing the witnesses' recantations raised sufficient doubt about the veracity of their initial claims. ER2 19, 26, 78. Both witnesses told responding police officers that they did not want to prosecute Cai. ER2 at 90. Lai and Lo are not native speakers of English, and an officer who spoke their native Cantonese had to be dispatched to take their statements. DC ECF 210-1 at 2. While Lai wrote her own statement, an HPD officer wrote Lo's statement, and there is no indication that the statement was read to Lo in her native Cantonese before she signed it. DC ECF 210-1 at 3. And, of course, none of the

20

statements (including those on the 911 recording) were made under oath or penalty of perjury. DC ECF 210-1 at 3.

As defense counsel pointed out to the district court, on such a paper record and without the advantages live testimony brings, it is not reasonable to determine which of their statements were truthful. ER2 89–90. This Court has recognized this very point: "Judges simply cannot decide whether a witness is telling the truth on the basis of a paper record and must observe the witnesses' demeanor to best ascertain their veracity—or lack thereof." *Oshodi*, 729 F.3d at 891–892 (quoting *1998 BMW "I" Convertible,* 235 F.3d at 400). Paper simply does not convey the credibility-determinative signals live testimony does, as the witness is compelled to confront the person she accuses and repeat her accusation under oath:

> The perception that confrontation is essential to fairness has persisted over the centuries because there is much truth to it. A witness "may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts. He can now understand what sort of human being that man is." Z. Chafee, The Blessings of Liberty 35 (1956), quoted in *Jay v. Boyd,* 351 U.S. 345, 375–376 (1956) (Douglas, J., dissenting). It is always more difficult to tell a lie about a person "to his face" than "behind his back." In the former context, even if the lie is told, it will often be told less convincingly. [Confrontation] does not, of course, compel the witness to fix his eyes upon the defendant; he may studiously look elsewhere, but the trier of fact will draw its own conclusions. Thus the right to face-to-face confrontation serves much the same purpose as … the right to cross-examine the accuser; both "ensur[e] the integrity of

the fact-finding process." *Kentucky v. Stincer*, [482 U.S. 730, 736 (1987)]. The State can hardly gainsay the profound effect upon a witness of standing in the presence of the person the witness accuses, since that is the very phenomenon it relies upon to establish the potential "trauma" that allegedly justified the extraordinary procedure in the present case. That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs.

*Coy v. Iowa*, 487 U.S. 1012, 1019 (1988) (citations emended).

The value of confrontation and cross-examination is that they may well discover what a paper record can never expose. Which is why the supposed reliability of a written accusation, untested by confrontation and cross-examination, does not suffice to overcome a defendant's due process and Rule 32.1 rights, absent, at the very least, some *other* evidence, extrinsic to the statement itself that lends credence to the unsworn statement at issue. See, e.g., *United States v. Hall*, 419 F.3d 980 (CA9 2005) (discussed below). Something that should not be lost sight of is that we are here talking about a unique kind of hearsay—not just any out-of-court statement, but one that accuses Cai of committing a crime.

When it comes to unsworn hearsay *accusations*, like those the district court relied upon here, the general rule is that they are *not* reliable "in and of themselves" (as the government here put it, ER2 27). *Comito*, 177 F.3d at 1171

("[u]nsworn verbal allegations are, in general, the least reliable type of hearsay"). Thus this Court held that Comito's ex-girlfriend's accusations of credit card and bank fraud, which she made to a probation officer, were "not inherently reliable." *Comito*, 177 F.3d at 1171; see also, e.g., *United States v. Fennell*, 65 F.3d 812, 813–8714 (CA10 1995) (holding that an unsworn accusation was not reliable, noting that even though it "might well be credible; potential truth … does not mitigate the almost total absence of indicia of reliability"). Nor is *Comito* a one-off aberration in this circuit. See, e.g., *United States v. Winston*, 447 Fed.Appx. 864, 864–865 (CA9 Aug. 17, 2011) (unpublished) (holding a threat accusation "bore no indicia of reliability" and agreeing that district court deprived defendant of his due process right to confrontation in a revocation proceeding that appears, from what little is said of it, to have gone strikingly like Cai's did); *United States v. Shirley*, 2014 WL 4802252 at *3 (D. Ariz. Sept. 26, 2014) (witness's unsworn statements to agent deemed "the least reliable form of hearsay" and reversing for deprivation of the defendant's due process right to confront the witness).

Only when something else corroborates an unsworn statement, does the statement begin to bear sufficient indicia of reliability. Thus, for example, in *United States v. Hall*, 419 F.3d 980 (CA9 2005), a witness's false imprisonment accusation was held reliable because it was *corroborated* by the police's

23

discovery of the specific weapon the witness said the defendant had used in the specific location where she had said police would find it. 419 F.3d at 987. Her accusation was further corroborated by the consistency of her subsequent statements to others. *Id.* And corroborated even more by medical evidence. *Id.* at 988. None of these things are apt here. Both witnesses quickly recanted their accusations, and it is the recantations that are corroborated by consistency in the retelling (to a state prosecutor, then to a pretrial services officer, if not others, such as the AUSA or the probation officer prosecuting this probation revocation against Cai). Plus, there is no medical evidence in this case.

The bottom line is that the district court ruled that speculative fear and hearsay exceptions outweighed Cai's due process right to confrontation. As the foregoing discussion and pertinent precedent attests, the district court incorrectly assessed relevant factors and, consequently, struck a manifestly incorrect balance under *Morrissey* and *Simmons*.

3.      The district court's error was not harmless. The government did not adduce any evidence confirming that Lai or Lo were actually afraid to testify or otherwise fearful of Cai. The government did not adduce any additional indicia of reliability as to the hearsay statements it relied upon to prove the alleged threats, believing instead that their supposed inherent reliability sufficed. The government did not adduce any corroborating evidence

24

of the alleged threats. Its evidence began and ended with Lai's and Lo's statements to responding police officers and Lai's statements to a 911 operator. And those statements were the sole thing the district court relied upon to revoke Cai's probation. On such a record, there is no reasonable way to hold the error harmless.

## Conclusion

This Court should vacate the district court's judgment of revocation and remand this matter for the district court to reinstate Cai's probation.

DATED:   Honolulu, Hawaii, December 18, 2018.

 /s/ Craig Jerome
CRAIG JEROME
Assistant Federal Defender
Counsel for Jia Hui Cai

25

**Statement of Related Cases**

Counsel is not aware of any cases pending before this Court that are related to the present matter.

DATED:   Honolulu, Hawaii, December 18, 2018.

 /s/ Craig Jerome
CRAIG JEROME
Federal Public Defender
Counsel for Jia Hui Cai

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 18-10339

I am the attorney or self-represented party.

**This brief contains** | 6,169 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(•) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ( ) it is a joint brief submitted by separately represented parties;

    ( ) a party or parties are filing a single brief in response to multiple briefs; or

    ( ) a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [            ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Craig W. Jerome    **Date** | Dec 18, 2018

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 08**      *Rev. 12/01/2018*